UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LORENZO HARRISON,
Plaintiff,

Case No. 1:12-cv-005
Barrett, J.
Litkovitz, M.J.

vs.

WILLIAM GREGG, et al.,
Defendants.

**REPORT AND RECOMMENDATION**

This matter is before the Court upon defendants William Gregg and Josh Murray's motion for summary judgment (Doc. 36) and plaintiff Lorenzo Harrison's response in opposition to the motion for summary judgment (Doc. 40).

## I. Introduction

Plaintiff, an inmate formerly incarcerated at the Lebanon Correctional Institution (LeCI), filed this action pro se under 42 U.S.C. § 1983 against defendants Gregg and Murray, correctional officers at LeCI, and several other defendants arising out of a use of force episode which occurred at LeCI on June 12, 2011. (Doc. 1). Plaintiff was granted leave to proceed *in forma pauperis*. (Doc. 2). Thereafter, plaintiff filed an amended complaint. (Doc. 11). The Court subsequently *sua sponte* dismissed the complaint against all defendants except defendants Gregg and Murray and allowed the case to proceed against defendant Gregg on plaintiff's Eighth Amendment excessive use of force claim and against defendant Murray on plaintiff's claim of deliberate indifference to plaintiff's safety. (Doc. 23).

## II. Facts

Defendants Gregg and Murray have submitted their affidavits in support of the motion for summary judgment (Doc. 36-60, Exh. F; Doc. 36-61, Exh. G), as well as additional affidavits and documents. Plaintiff has submitted the following documents: plaintiff's statement and other

witnesses' statements from the Rules Infraction Board (RIB) hearing held in connection with the incident (Doc. 43-1, Exhs. 1, 2, and 5); documents from the internal grievance proceedings (*Id.*, Exhs. 3, 10, 11); a conduct report related to the use of force incident (*Id.*, Exh. 6); the report of plaintiff's medical examination (*Id.*, Exh. 4); an inmate use of force statement form, which plaintiff refused to complete (*Id.*, Exh. 8); plaintiff's request for a notification of grievance form (*Id.*, Doc. 9); a chart with use of force statistics for a number of institutions, including LeCI (*Id.*, Exhs. 12, 13); and a hand-drawn diagram of what plaintiff purports to be the lay-out of his cell at LeCI. (*Id.*, Exh. 7). Plaintiff has not submitted any affidavits or sworn declarations in opposition to the motion for summary judgment. The Court has gleaned the facts from the parties' submissions and finds the following facts to be undisputed, except where otherwise noted.

On June 12, 2011, defendants Gregg and Murray were working as Relief Officers in H-Block at LeCI. (Doc. 36-60, Gregg Aff., Exh. F, ¶ 6; Doc. 36-61, Murray Aff., Exh. G, ¶ 6). A Relief Officer assignment is a position which requires an officer to move about the facility as situations and circumstances warrant. (*Id.*, ¶ 3). Defendants were monitoring inmates as the inmates returned inside from the recreation yard. (*Id.*, ¶ 6). Because the day room was full, defendants were directing inmates to return to their cells. (*Id.*). When Gregg ordered plaintiff to return to his cell, plaintiff began arguing and was verbally resistant to Gregg's direction. (Gregg Aff., Exh. F, ¶ 7; Murray Aff., Exh. G, ¶ 6). Defendant Murray describes plaintiff as "verbally combative" at this point. (Murray Aff., Exh. G, ¶ 6). Defendants escorted plaintiff back to his cell, and plaintiff continued to be verbally resistant towards the officers. (Gregg Aff., Exh. F, ¶ 7; Murray Aff., Exh. G, ¶ 6).

When the officers and plaintiff arrived at plaintiff's cell at 2-H-17, plaintiff entered the cell; however, defendants allege that plaintiff blocked defendant Murray's attempt to shut and secure the cell door by placing his foot in the door's path. (Gregg Aff., Exh. F, ¶ 8; Murray Aff., Exh. G, ¶ 6). Defendants allege that Gregg ordered plaintiff to remove his foot, but plaintiff refused and responded, "No!" (Gregg Aff., Exh. F, ¶ 8; Murray Aff., Exh. G, ¶ 7). Defendant Gregg alleges that he then decided it was necessary to issue a Conduct Report to plaintiff for refusing to obey a direct order and for verbally resisting Gregg's direction to return to his cell, and Gregg determined it was necessary to take plaintiff into custody for that purpose. (Gregg Aff., Exh. F, ¶ 8). Defendant Gregg deployed a short burst of O.C. [Oleoresin capsicum] Spray ("pepper spray") toward plaintiff's face, and defendants allege plaintiff took a combative stance in response; specifically, Gregg asserts plaintiff brought his fists up to his chest and took a step backwards further into the cell. (Gregg Aff., Exh. F, ¶ 9; Murray Aff., Exh. G, ¶ 7). Defendant Gregg then entered the cell and used a balance displacement technique to take plaintiff to the ground for the purpose of taking him into custody. (Gregg Aff., Exh. F, ¶ 9; Murray Aff., Exh. G, ¶ 7). Defendants allege that after plaintiff landed on his back on the ground, plaintiff kicked Gregg in the stomach, which briefly pushed Gregg away from plaintiff. (Gregg Aff., Exh. F, ¶ 9; Murray Aff., Exh. G, ¶ 7). Defendants allege that Murray then took hold of plaintiff's right arm and rolled him over onto his stomach, and Gregg states Murray placed plaintiff partially on his bunk and partially on the floor. (Gregg Aff., Exh. F, ¶ 9; Murray Aff., Exh. G, ¶ 7). Other officers then responded and assisted defendant Murray in handcuffing plaintiff's wrists. (*Id.*). Defendant Gregg alleges that once plaintiff was handcuffed, he was brought to his feet and was escorted to the infirmary by other officers. (Gregg Aff., Exh. F, ¶ 9). The entire incident lasted less than one minute. (*Id.*, ¶ 11; Murray Aff., Exh. G, ¶ 9).

Both officers were checked at the infirmary for injuries pursuant to prison policy. (Gregg Aff., Exh. F, ¶ 10; Murray Aff., Exh. G, ¶ 8). Murray did not sustain any injuries, and Gregg sustained only slight abrasions, as well as scratches and a reddened area on the right side of his stomach which allegedly resulted from plaintiff's kick. (*Id.*)

Plaintiff has not introduced affidavits or evidence to dispute that he became verbally abusive when ordered to return to his cell or that Gregg and Murray escorted him to the cell. Plaintiff does dispute that he attempted to block the cell door with his foot and alleges that he was "seated on his bunk inside his cell when the brutal assault took place." (Doc. 43 at 4, 15, citing Exhs. 1, 2, 3, 5). The evidence plaintiff has submitted in support of his allegation that he did not attempt to block the cell door consists of his witness statement, the witness statements of two other inmates, and the Informal Complaint Resolution (Exh. 3), which is illegible. The witness statement summarizing plaintiff's June 24, 2011 testimony before the RIB reads as follows:

> Not guilty to both charges. I returned from yard rec and sat down in the day room for a short period of time. Then I went to my cell to use the bathroom. When I attempted to return to the day room the officer stopped me and told me to return to my cell. I did get verbally loud but returned to my cell. When the officer came into my cell he maced me but I turned my head and the mace hit my pillowcase and state shirt. I didn't block the door with my foot. I was on my bunk when he maced me, not standing in the door. I did not struggle with the officers at any time nor did I kick the officer.

(See Doc. 43-1, Exh. 1; Doc. 36-50, Exh. E-6-1[1]).

Exhibit 2 is a signed witness statement summarizing inmate Prince's June 24, 2011 testimony before the RIB, which states as follows:

---

[1] Exhibits 1 and E-6-1 are identical, except Exhibit 1 includes handwriting that is not included on Exhibit E-6-1. The handwriting reads: "THIS IS FALSE. IT LEFT OUT EVERYTHING I SAID. WHERE'S THE RECORDING?" Additional handwriting below plaintiff's handwritten signature reads: "IT WAS SIGNED ELECTRONICALLY I NEVER READ THIS NOR KNEW WHAT I WAS SIGNING".

4

> I was on the second range, high side, of H block, 2-H-31. We had day room that evening and some of the officers came into the block and were stopping certain inmates from going to the dayroom. Mr. Harrison was in his doorway and I heard CO Gregg yell at inmate Harrison, "because I said so". CO Gregg stepped into the cell and started to assault inmate Harrison after they had some words. He assaulted Mr. Harrison by hitting him. Mr. Harrison was on the bunk with his head closest to the wall. CO Murray was standing in the doorway of the cell.

(Doc. 43-1, Exh. 2).

Exhibit 5 is a witness statement summarizing the RIB testimony of inmate Shoup. The summary reads in its entirety as follows:

> I saw them at his cell door arguing. Then I saw one of the CO's sling the door open and enter the cell. Another CO ran from the other side of the range. Then a bunch of CO's ran into the block and into the cell. I could not see what was going on inside the cell.

(Doc. 43-1, Exh. 5).

Plaintiff denies that defendant Murray ever entered the cell; instead, plaintiff alleges that Murray stood in the doorway looking on and failed to intervene. (Doc. 43 at 20). Plaintiff notes that inmate Prince stated in his RIB summary that defendant Murray was standing in the doorway of the cell. (*Id.* at 18, citing Doc. 43-1, Exh. 2).

Plaintiff was seen by Nurse Deutsch in the infirmary following the incident. (Doc. 36-42, Exh. D-20). The medical examination report noted plaintiff had swelling under the eyes and a 1-millimeter cut under the left eye. (*Id.*). Plaintiff complained of burning but denied any other physical injuries. (*Id.*).

It is undisputed that the matter was investigated by the LeCI use of force committee, which made a recommendation of "No further action required." (Doc. 36-23, Exh. D-1). The Warden of LeCI, Timothy Brunsman, concurred with the recommendation. (*Id.*).

5

### III. Defendants Gregg and Murray's Motion for Summary Judgment

Defendants Gregg and Murray move for summary judgment on plaintiff's claims against them pursuant to Fed. R. Civ. P. 56(a). They contend that plaintiff does not state whether he is asserting claims against defendants in their official or individual capacities. Assuming plaintiff is bringing claims against defendants in their official capacity, defendants contend that plaintiff's claims must fail because the claims are barred under the Eleventh Amendment to the United States Constitution. Insofar as plaintiff sues defendants in their individual capacity, they allege there is no genuine issue of material fact as to whether they are entitled to qualified immunity on plaintiff's Eighth Amendment claim for violation of his constitutional rights to be free from excessive force and deliberate indifference to his safety. Defendants allege that the undisputed facts disclose plaintiff violated prison rules which required defendants to respond with the use of force; plaintiff did not claim any injury when he was examined at the LeCI infirmary or at any time thereafter; and the force used by the officers was *de minimis* and constituted the least amount of force necessary to maintain institutional security and enforce institutional rules, to overcome plaintiff's verbal and physical resistance to direct orders, and to respond to his assaultive behavior towards defendant Gregg.

In response, plaintiff contends that the motion for summary judgment should be denied because there are genuine issues of material fact and reasonable minds can draw different inferences from some facts so as to preclude judgment as a matter of law. (Doc. 43). Plaintiff disputes defendants' version of the incident, alleging that they have provided false and implausible accounts which are contradicted by their own reports and by the eyewitness accounts of other inmates. Plaintiff also contends that the Ohio Attorney General should be barred from providing representation to defendants in this matter pursuant to Ohio Rev. Code § 109.362,

which precludes the attorney general from representing an officer or employee if the attorney general's investigation discloses that the defendant "was acting manifestly outside the scope of his employment or official responsibilities, with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"[2]

### IV. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1982). The movant bears the burden of demonstrating that there are no genuine issues for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at

---

[2] Even assuming plaintiff had standing to challenge the attorney general's representation of defendant under § 109.362, there is nothing in the record to indicate that the attorney general's investigation in this case disclosed that either defendant was acting in such a manner that he is not entitled to representation under § 109.362. Accordingly, plaintiff's allegation that the attorney general should be barred from representing defendants is baseless.

7

trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (quoting *First Nat'l Bank*, 391 U.S. at 288-89). Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." *Guarino*, 980 F.2d at 405 (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers). However, a party's status as a pro se litigant does not alter the duty on a summary judgment motion to support the party's factual assertions with admissible evidence. *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp.2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

## V. Applicable law

Defendants contend they are entitled to qualified immunity from suit on plaintiff's § 1983 claims against them. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity not only insulates

8

government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), *overruled in part, Pearson v. Callahan,* 555 U.S. 223 (2009).

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the plaintiff's submissions, was the right clearly established at the time of the injury? *Saucier,* 533 U.S. at 201. In its discretion, the court may initially address either of these questions in light of the circumstances of the particular case before it in resolving an officer's qualified immunity claim. *Pearson,* 555 U.S. at 236. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The rights at issue here are plaintiff's Eight Amendment right to be free from the use of excessive force by a prison official, *Whitley v. Albers*, 475 U.S. 312, 327 (1986), and the right to be free from deliberate indifference to inmate safety. *Farmer v. Brennan*, 511 U.S. 825 (1994). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). *See also Whitley*, 475 U.S. at 320-321; *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the official; and the extent of the injury inflicted. *See Hudson*,

503 U.S. at 7; *Whitley*, 475 U.S. at 320-321. The inmate is not required to suffer a serious injury, but the seriousness of his injuries may be considered in determining whether the force used was wanton and unnecessary. *Hudson*, 501 U.S. at 7.

"[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) (citing *Whitley*, 475 U.S. 312; *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Conversely, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9). A *de minimis* use of physical force does not violate the Eighth Amendment's prohibition against cruel and unusual punishments "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37-38 (quoting *Hudson*, 503 U.S. at 9). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (citing *Hudson*, 503 U.S. at 9) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

To establish liability under the Eighth Amendment for a claim of deliberate indifference to inmate safety, the plaintiff must show that a prison official acted with "deliberate indifference" to a substantial risk of serious harm to the plaintiff. *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (citing *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux,* 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corrections Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 79 (6th Cir. 1995)).

10

### VI. Defendants are entitled to summary judgment on plaintiff's claims against them.

#### 1. Plaintiff's claims against defendants in their official capacity are barred.

Plaintiff does not specify whether he brings his claims against defendants in their individual capacity, their official capacity, or both. Insofar as plaintiff seeks to bring claims against defendants in their official capacity, his claims are barred by the Eleventh Amendment to the United States Constitution. The only type of relief plaintiff seeks in this lawsuit is money damages. (Doc. 11 at 11). A suit against a state official in his official capacity for money damages is treated as a suit against the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 654 n.8 (6th Cir. 2007). States are protected by the Eleventh Amendment from suits brought under § 1983, which creates a cause of action against only a "person" who causes the deprivation of another's constitutional rights. *Hamilton's Bogarts, Inc.*, 501 F.3d at 654, n.8. Accordingly, any claims plaintiff brings against defendants in their official capacity must be treated as a suit against the state itself and must be dismissed as barred by the Eleventh Amendment.

#### 2. Defendants are entitled to qualified immunity on the claims brought against them in their individual capacity.

There are no genuine issues of material fact that defendants are entitled to qualified immunity on plaintiff's Eighth Amendment claims against them. First, plaintiff has failed to show there is a genuine issue as to the essential facts culminating in defendant Gregg's use of force against him on June 12, 2011. There is no evidence that contradicts defendants' affidavit statements showing that plaintiff was verbally resistant while being escorted back to his cell. (Gregg Aff., Exh. F, ¶ 7; Murray Aff., Exh. G, ¶ 6). Further, although plaintiff denies that he blocked the cell door with his foot when defendant Murphy attempted to shut and secure the door, plaintiff has not submitted any affidavits or sworn declarations that support his version of

11

the incident and create a genuine issue of material fact on this point. Instead, plaintiff relies on three unsworn witness statements to support his contention that he did not block the door and that he was seated inside his cell and on his bunk when the use of force occurred: (1) the witness statement summarizing his June 24, 2011 testimony before the RIB (Doc. 43-1, Exh. 1): (2) the witness statement summarizing inmate Prince's testimony before the RIB (*Id.*, Exh. 2); and (3) the witness statement summarizing inmate Shoup's testimony at the RIB hearing (*Id.*, Exh. 5). However, plaintiff is not entitled to rely on the allegations or denials in these unsworn filings to oppose summary judgment (*see Maston*, 832 F. Supp.2d at 851-52 (citing *Viergutz*, 375 F. App'x at 485)), and moreover, plaintiff has apparently disavowed his signed statement summarizing the testimony he gave at the RIB hearing. (Doc. 43-1, Exh. 1). Nonetheless, even if the unsworn statements were accepted as valid for summary judgment purposes, the statements do not contradict defendants' allegation that plaintiff attempted to block the door with his foot for the reasons explained below.

      Plaintiff alleges that the testimony of the two inmate witnesses, Prince and Shoup, shows that plaintiff was "inside his cell when defendant William Gregg came in" and that neither witness saw plaintiff blocking the door. (Doc. 43 at 15). However, contrary to plaintiff's allegation, inmate Prince's account places plaintiff in the doorway at some point during the use of force incident. Inmate Prince testified that he observed plaintiff at his doorway and heard defendant Gregg yell at plaintiff "because I said so." (*Id.*, Exh. 2). Although inmate Prince testified that he subsequently saw defendant Gregg step into the cell and begin to "assault" plaintiff after the two exchanged words (*Id.*), this statement does not contradict the testimony of either defendant Gregg or defendant Murray that plaintiff initially placed his foot in the door in an attempt to block it from closing before defendant Gregg stepped into the cell. (Doc. 36-60,

Gregg Aff., Exh. F, ¶¶ 8-9; Doc. 36-61, Murray Aff., ¶ 6). Inmate Shoup testified he saw someone arguing at plaintiff's cell door (Doc. 43-1, Exh. 5), which likewise is not necessarily inconsistent with defendants' averments. Nor does the statement of either inmate make clear when Gregg sprayed plaintiff with the O.C. Spray. Accordingly, because plaintiff has not come forward with evidence which contradicts the sworn statements of defendants Gregg and Murray that plaintiff attempted to block the door with his foot, plaintiff has not shown the existence of a genuine issue of fact on this point.

Nor has plaintiff submitted affidavits or sworn declarations to create a genuine issue as to whether he kicked Gregg in the stomach or to call into question any other material fact. Instead, plaintiff points to alleged inconsistencies in the affidavit statements provided by defendants Gregg and Murray and the inmate witness summaries from the RIB hearing in an attempt to create genuine issues of fact. Plaintiff argues that defendant Gregg's statements that Murray grabbed plaintiff by his arm and placed him face down partially on his bunk and partially on the floor (Doc. 36-60, Gregg Aff., Exh. F), are inconsistent with inmate Prince's statement that Murray was in the doorway (Doc. 43-1, Exh. 2). (Doc. 43 at 18-19). However, there is no allegation by inmate Prince that Murray remained outside the cell during the entire incident and thus no apparent conflict between defendant's affidavit statement and inmate Prince's statement. (*See* Doc. 43-1, Exh. 2). Plaintiff further argues that defendants' statements that Murray grabbed plaintiff by his right arm and rolled him over onto his stomach, placing him partially on the bunk and partially on the floor (Doc. 36-60, Gregg Aff., Exh. F, ¶ 9; Doc. 36-61, Murray Aff., Exh. G, ¶ 7), are inconsistent with inmate Prince's statement that plaintiff was on the bunk with his head closest to the wall (Doc. 43-1, Exh. 2), because Prince's statement would necessarily mean that

Murray rolled plaintiff away from the bed instead of onto the bed. (Doc. 43 at 18-19). However, plaintiff's theory is not supported by the evidence plaintiff cites.

Plaintiff has not shown there are inconsistencies between the sworn averments of defendants and the other evidence of record which create genuine issues of material fact as to pertinent aspects of the use of force incident. The evidence plaintiff has produced does not create a genuine issue of material fact as to whether the force was applied maliciously and sadistically to cause harm as opposed to as a reasonable response to plaintiff's verbal and physical resistance to defendants' direct orders. Taken in the light most favorable to plaintiff, the facts do not show that a reasonable individual in defendants' position would understand that their acts or omissions violated plaintiff's Eighth Amendment rights.

Moreover, accepting as true plaintiff's allegations that he never attempted to block the door with his foot or provided any other resistance, defendants are nonetheless entitled to summary judgment on plaintiff's Eighth Amendment claims because the evidence shows defendant Gregg's actions constituted a *de minimis* use of force which caused plaintiff to suffer no discernible injury.

Although an inmate need not show he suffered a significant injury to establish his Eighth Amendment claim, the absence of a serious injury is certainly relevant. *Wilkins*, 559 U.S. at 37. "[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Id.* (quotations omitted).

Here, the undisputed evidence shows that plaintiff was examined by Nurse Deutsch at LeCI immediately following the incident. (Doc. 36-42, Exh. D-20). Her report reflects that

14

plaintiff advised the nurse: "I was maced." (*Id.*). Her report recorded the following examination results:

> [complaints of] burning to face, mace noted to face [with] swelling under eyes, 1 mm cut under [left] eye - bleeding controled [sic]. [Patient] denies injuries . . . No other injuries on physical assess[ment] to head, torso, arms, legs, mace to face.

*Id.* Plaintiff was treated by having his face cleaned, he was instructed on clearing the mace by decreasing eye blinking, and he was advised to return with any problems or concerns. (*Id.*).

Plaintiff has not submitted any evidence to show that he suffered any injuries beyond the burning and miniscule cut noted by Nurse Deutsch. Plaintiff makes reference in his opposing memorandum to "two (2) black eyes, bruises, lumps and a cut" that he allegedly suffered in the incident. (Doc. 43 at 5). However, plaintiff has offered no proof of such injuries. In fact, the undisputed evidence shows that plaintiff reported to Nurse Deutsch that he did not suffer any injuries in the incident, and he was not prescribed any pain treatment or medication as a result of the incident. Further, as noted by defendants, plaintiff did not return to the infirmary for follow-up care, lodge subsequent complaints of pain or continuing symptoms, or seek any additional treatment for injuries sustained in the June 12, 2011 incident. Thus, there is no evidence plaintiff suffered an injury as a result of the use of force by defendant Gregg (or by defendant Murray).

In sum, plaintiff has not come forward with evidence that defendant Gregg used excessive force against him or that defendant Murray was deliberately indifferent to his safety. Plaintiff has presented no evidence that defendant Gregg acted "maliciously and/or sadistically" for the improper purpose of inflicting pain or that the amount of force applied was more than *de minimis*. Nor is there any evidence to show that plaintiff suffered a discernible injury as a result of the use of physical force. The force applied did not rise to the level of a violation of plaintiff's constitutional right to be free from cruel and unusual punishments. *See Hudson*, 503 U.S. at 9.

For these same reasons, there is insufficient evidence to demonstrate that defendant Murray showed deliberate indifference to plaintiff's safety. Accordingly, defendants are entitled to qualified immunity on plaintiff's Eighth Amendment claims against them, and their motion for summary judgment should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (Doc. 36) be **GRANTED**.

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be taken in good faith. See *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 9/23/2013

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LORENZO HARRISON,
Plaintiff,

Case No. 1:12-cv-005
Barrett, J.
Litkovitz, M.J.

vs.

WILLIAM GREGG, et al.,
Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X | ☒ Agent<br>☐ Addressee |
| | B. Received by (Printed Name) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Lorenzo Harrison<br>#563687<br>SOCF<br>P.O. Box 45699<br>Lucasville, OH 45699 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No | |
| | 3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. | |
| | 4. Restricted Delivery? (Extra Fee) ☐ Yes | |
| 2. Article Number<br>(Transfer from service label) | 7011 3500 0001 5345 9442 | |
| PS Form 3811, February 2004 | Domestic Return Receipt | 102595-02-M-1540 |